PER CURIAM.
Plaintiff Guillermo Machin appeals from a final summary judgment entered against him in a wrongful death action. We reverse.
Guillermo Machin brought suit against defendants Royale Green Condominium Association and G.D.G. Services, Inc., alleging that their negligence in the operation of Royale Green’s swimming pool resulted in the drowning of plaintiff’s two-and-one-half-year-old son, Roberto Machin. Defendants moved for summary judgment on the grounds that there were no material issues of fact that if resolved in favor of plaintiff would result in a verdict in his favor and that the sole proximate cause of the accident was the mother’s lack of supervision.
Mr. and Mrs. Machin rented an apartment in the Royale Green condominium complex from the owners of the apartment. On June 3, 1983, plaintiff took Roberto to the pool in the early afternoon. His wife and their other two children joined them at 2:45 p.m., and plaintiff departed. His family remained until 5:00 p.m. when Mrs. Ma-chin left with the children and went to a neighbor’s apartment. She visited for 15 to 20 minutes, during which time the Ma-chin children were playing in and around the neighbor’s apartment. At some point* Roberto and George Machin left their mother’s vicinity and returned to the pool. Shortly thereafter, Roberto was found at the bottom of the pool nearly drowned. He died several days later.
The pool was enclosed by a chain link fence that provided access through a gate. G.D.G. Services, Inc., managed the condominium property pursuant to contract and was responsible for maintenance of the pool gate and latch. Testimony indicated that the gate did not self-close or have a spring lock in violation of Dade County Code 33-12(e) & (k).[1] G.D.G.’s property manager testified that he found the gate ajar on several occasions and that small children were known to gain access to the *648 pool without adults accompanying them. The president of Royale Green Condominium Association also testified to knowledge of young children coming into the pool area without their parents. George Machin, decedent’s brother, was deposed and gave two different accounts of how they got inside the pool area: (1) that an older lady let the children into the pool area, and (2) that the children entered after the lady passed through the gate and it did not close behind her.
Plaintiff contends that based on this record there are disputed issues of material fact as to defendants’ negligence and the proximate cause of the drowning which should have precluded the entry of summary judgment. We agree.
In order to prevail, the party moving for a summary judgment has the burden of demonstrating the nonexistence of any genuine issue of material fact and that movant is entitled to judgment as a matter of law. Fla.R.Civ.P. 1.510(c). “Courts will not be disposed to grant a summary judgment unless a movant can show unequivocally that there was no negligence, or that the plaintiff’s negligence was the sole proximate cause of the injury.” Goode v. Walt Disney World Co., 425 So.2d 1151, 1154 (Fla. 5th DCA 1982), rev. denied, 436 So.2d 101 (Fla.1983). The condominium association owed decedent, as a renter in the condominium complex, a duty to exercise ordinary or reasonable care. See Hemispheres Condominium Ass’n v. Corbin, 357 So.2d 1074 (Fla. 3d DCA), cert. denied, 364 So.2d 883 (Fla.1978). The testimony that the gate did not self-close in violation of the code was evidence of negligence. Bennett M. Lifter, Inc. v. Varnado, 480 So.2d 1336 (Fla. 3d DCA 1985), rev. dismissed, 484 So.2d 7 (Fla.1986). Thus, summary judgment could only be proper if plaintiff’s negligence was the sole proximate cause of the injury.
It cannot be said as a matter of law that the mother’s lack of supervision was the sole proximate cause of the accident. The conflicting interpretations of George Ma-chin’s testimony create a material issue of fact regarding whether the children gained access to the pool because the gate did not self-close. See Chiles v. Beaudoin, 384 So.2d 175 (Fla. 2d DCA 1980); Rauschbaum v. Goldstein, 204 So.2d 897 (Fla. 4th DCA 1967). In addition, there is circumstantial evidence from which a jury could draw a reasonable inference that the children gained access to the pool because of the gate’s failure to self-close. Cf. Goode, 425 So.2d at 1155 (circumstantial evidence as to proximate cause is sufficient to allow the case to go to the jury where a prima facie case of negligence exists); Majeske v. Palm Beach Kennel Club, 117 So.2d 531 (Fla. 2d DCA 1959) (same), cert. denied, 122 So.2d 408 (Fla.1960). Whether the failure of the gate to latch automatically proximately caused the drowning is a question for the jury. See Johnson v. Harris, 23 Ariz.App. 103, 530 P.2d 1136 (1975) (sufficient evidence from which jury could conclude that violation of city code requiring pool fence to be at least five feet in height and gates to be equipped with self-closing devices caused child’s drowning); Butler v. Sports Haven Int’l, 563 P.2d 1245, 1247 (Utah 1977) (“reasonable minds may differ as to whether what the defendant did or failed to do in regard to surveillance of the pool and keeping a workable lock on the gate met the required standards of reasonable care under all the circumstances; and whether any failure therein might reasonably be found to be the cause of the drowning”).
The mother’s negligence, if any, cannot insulate defendants from all liability. In Goode, where a child apparently fell into a moat and drowned, the court held that the mother’s negligent supervision could not serve as an efficient, intervening cause shielding defendant from liability where her negligent supervision was foreseeable. 425 So.2d at 1156. The very nature of a pool and the requirement of safety barriers attest to the foreseeability of unsupervised children falling into unprotected pools. See Gordon v. Strawther Enters., Inc., 273 Cal.App.2d 504, 78 Cal.Rptr. 417, 423 (1969) (“The underlying reason for the San Jose ordinance requiring a self-closing device was to foresee and *649 guard against the possibility that the gate would be opened by someone who would neglect to close it.”); see also Guillot v. Fisherman’s Paradise, Inc., 437 So.2d 840, 844 (La.1983) (foreseeable that young children would be attracted to exposed pools); Butler, 563 P.2d at 1246 (existence of the chainlink fence attests to some awareness of the dangers inherent in an open swimming pool); Clifford v. Recreation & Park Comm’n, 289 So.2d 373, 376 (La.Ct.App. 1973), writ denied, 293 So.2d 168 (La.1974) (“Young children are naturally attracted to swimming pools and open doors to unguarded pools present great hazards.”).
We have considered all additional points raised by plaintiffs appeal and conclude that no other reversible error has been demonstrated. We reverse the final summary judgment and remand the cause to the trial court for further proceedings.
Reversed and remanded.

. Sec. 33-12. Fences and safety barriers for swimming pools.
******
(e) Gates. Gates shall be of the spring lock type, so that they shall automatically be in a closed and fastened position at all times. Gates shall also be equipped with a safe lock and shall be locked when the swimming pool is not in use.
******
(k) Maintenance. It shall be the responsibility of the owner and/or occupant of the premises upon which the swimming pool is hereafter erected to maintain and keep in proper and safe condition the safety barrier required and erected in accordance with this chapter.